# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| VAUGHN JOHNSON, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:18-cv-02114-RDP-JHE |
| WILLIAM BARR, et al., | ) |
| Defendants. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The plaintiff, Vaughn Johnson, has filed a *pro se* amended complaint pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), alleging violations of his rights under the Constitution or laws of the United States. (Doc. 22). The plaintiff names the following individuals as defendants: United States Attorney General William Barr; former Secretary of Homeland Security Kirstjen Nielsen; Immigration and Customs Enforcement ("ICE") Field Operations Directors Marc Moore, David Rivera, and Corey Price; Diplomatic Security Services ("DSS") agents Jose Espinal, Silva Stephen, and Bryan Baer; ICE agents Ileana Aguilar, Justin Demoura, Jesus Cruz, Louis Acosta, Scott Pittman, Kendal Hirsh, L. Lambert, K. Speese, and Bennie Hurley; United States Probation Officer Angela Butler; and various unknown government employees. (*Id.* at 6-8). The plaintiff seeks monetary, injunctive, and declaratory relief. (*Id.* at 2, 21, 39, 56-58). Also pending are the plaintiff's motions to suppress evidence related to his arrests, compel the defendants to produce certain records, and show cause why the court should not grant his requested relief. (Docs. 31, 33, 34).

In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the amended complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991). For the following reasons, the

undersigned recommends the court dismiss the amended complaint. The undersigned further recommends the court deny the plaintiff's motion to suppress, compel, and show cause as moot. (Docs. 31, 33, 34).

## I. Standard of Review

Pursuant to 28 U.S.C. § 1915(a)(1), a United States court may authorize the commencement of any proceeding, without prepayment of fees, by a person who submits an affidavit that includes a statement of assets that he possesses, and indicates that he is unable to pay such fees. The court, however, may dismiss an action at any time if it determines that the allegation of poverty is untrue or the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2).

A claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit or the claim seeks to enforce a legal right that clearly does not exist. *Id*. at 327.

Moreover, a complaint may be dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). A review on this ground is governed by the same standards as dismissals for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Jones v. Bock*, 549 U.S. 199, 215 (2007). In order to state a claim upon which relief may be granted, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'show

that the pleader is entitled to relief.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 557 (2007) (alteration incorporated). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Similarly, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is also warranted. *Jones v. Bock*, 549 U.S. at 215.

A *pro se* pleading "is held to a less stringent standard than a pleading drafted by an attorney" and is liberally construed. *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015). However, such pleadings still must allege factual allegations that "raise a right to relief above the speculative level." *Saunders v. Duke,* 766 F.3d 1262, 1266 (11th Cir. 2014) (internal quotation marks omitted).

## II. Factual Allegations

The plaintiff alleges he was born in Alabama in 1973, but his birth was never registered. (Doc. 22 at 9). He asserts that in March 2010, he was detained for questioning regarding possible wire fraud. (*Id.*). After this detention and questioning, the plaintiff alleges a detective filed charges against him and began examining his citizenship. (*Id.*). The plaintiff states that there was confusion between his identity (born in Alabama, but raised primarily in Florida) and that of someone using his mother's e-mail who had an adopted son who was born in England, but who grew up in the Bahamas. (*Id.*). According to the plaintiff, the detective was "not satisfied" and "became convinced" that the plaintiff was not a United States citizen. (*Id.*). The plaintiff contends that authorities determined his true identity (Vaughn Johnson, born in Alabama) and, through his fingerprints, learned he also had used another name, Casey Oliver Joseph, and had fraudulently obtained a passport in 2000 in Florida. (*Id.* at 10).

The plaintiff explains that on May 18, 2011, an ICE officer issued an immigration detainer in the name of "Juan Antonio Johnson, aka Casey Oliver Johnson, aka Vaughn Juan Johnson also known as Vaughn Johnson." (Doc. 22 at 10). The plaintiff alleges that his attorney challenged the detainer based on the plaintiff's United States citizenship. (*Id*.). A magistrate judge ordered the plaintiff detained temporarily until ICE could pick him up within 48 hours to "clarify and determine" his "legal status." (*Id*.). The plaintiff states that ICE never took custody of him but rather left the detainer in place based on "inaccurate records." (*Id*. at 11). In June 2011, the plaintiff pled guilty in the United States District Court for the Middle District of Florida for making a false statement on a passport in violation of 18 U.S.C. § 1542 and was sentenced to twenty months imprisonment. (*Id*. at 10, 16).

In August 2011, before completing his sentence, a federal grand jury in the United States District Court for the District of the Virgin Islands charged the plaintiff with wire fraud. (Doc. 22 at 11). Again, ICE officials visited the plaintiff. (*Id*.). The plaintiff maintained that he was a United States citizen. (*Id*.). On August 15, 2012, the plaintiff was issued a Notice to Appear, which alleged the plaintiff was not a United States citizen. (*Id*.). In April 2013, the plaintiff pled guilty to wire fraud in the District Court of the Virgin Islands in violation of 18 U.S.C. § 1343 and was sentenced to thirty months imprisonment. (*Id*. at 11, 16).

In 2016, the plaintiff pled guilty to another charge of falsifying a United States passport application in violation of 18 U.S.C. § 1542 in the United States District Court for the Middle District of Florida. (Doc. 22 at 16-17). Also, in 2016, the United States Department of Homeland Security instituted proceedings for the plaintiff's removal from the United States. (*Id*. at 17). Following a hearing held in the State of Nevada, an immigration judge denied the plaintiff's claims

of United States citizenship and ordered him removed based on the plaintiff's criminal record. (*Id*. at 18).

On December 27, 2018, the plaintiff filed the instant complaint. (Doc. 1). On February 25, 2019, the plaintiff notified the court that he had been deported to the Bahamas. (Doc. 15 at 1). On April 12, 2019, the plaintiff filed an amended complaint. (Doc. 22). Although the amended complaint is not the model of clarity and is replete with rambling legalese, the plaintiff appears to allege that there was no probable cause for ICE to issue a detainer or warrant for his arrest. (Doc. 22 at 10, 29-30, 47). The plaintiff reasons he was illegally seized and, therefore, the Notice to Appear, his detention, and the subsequent final order of removal are all unconstitutional. (*Id*. at 40, 50). In addition to monetary damages, the plaintiff requests that this court "strike and exclude . . . [the] unlawful" ICE detainers, Notice to Appear, detention order, and final order of removal. (*Id*. at 2, 57-58).

### III. Analysis

#### A. Jurisdiction

The plaintiff seeks an order declaring his Notice to Appear, detention order, and final order of removal unconstitutional. (Doc. 22 at 57-58). The plaintiff also challenges the order of removal and his subsequent deportation based on his claims of United States citizenship. (*Id*. at 9). However, this court lacks jurisdiction to grant the relief the plaintiff seeks. Specifically, the REAL ID Act of 2005, codified at 8 U.S.C. § 1252, removes jurisdiction from district courts to consider challenges to removal actions:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter . . . .

8 U.S.C. § 1252(a)(5).  In addition, 8 U.S.C. § 1252(b)(9) precludes review of questions of law or fact "arising from any action taken or proceeding brought to remove an alien from the United States," stating:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.  Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9).

For those who seek to challenge their removability based on their alleged United States citizenship, such as the plaintiff here, § 1252(b)(5) requires them to do so with a petition for review in the appropriate circuit court of appeals.  *See* 8 U.S.C. § 1252(b)(5).  Specifically, § 1252(b)(5)(C) instructs that courts may determine the nationality claims of individuals in removal proceedings "only as provided in this paragraph."

To the extent the plaintiff complains that he was wrongfully deported, § 1252(g) provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).  Accordingly, a district court lacks jurisdiction to entertain any challenge of the underlying removal order.  S*ee Alexandre v. U.S. Att'y Gen.*, 452 F.3d 1204, 1206 (11th Cir. 2006); *Madu v. U.S. Att'y Gen.*, 470 F.3d 1362, 1366-67 (11th Cir. 2006).

Thus, it is apparent from the statutory language that in passing the REAL ID Act, Congress intended challenges to removal orders be heard in a single forum – the courts of appeals.  *See*

*Bonhometre v. Gonzales*, 414 F.3d 442, 446 (3d Cir. 2005). This court lacks jurisdiction to review the issue of the plaintiff's citizenship or his claims that his Notice to Appear, detention order, and order of removal were unconstitutional.

### B. *Bivens* Claims

#### 1. Official Capacity Claims

Even if this court had subject-matter jurisdiction over the plaintiff's constitutional claims, they are nonetheless subject to dismissal. As an initial matter, the plaintiff expressly states that he brings this action pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) against most of the defendants in their official capacities. (Doc. 22 at 2, 6-8). However, *Bivens* allows suit against federal actors solely in their individual capacities. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 69-72 (2001). Therefore, to the extent the plaintiff alleges claims against the defendants in their official capacities, such claims are due to be dismissed.

#### 2. Individual Capacity Claims

Neither does it appear that the plaintiff could raise claims against the defendants in their individual capacities in a *Bivens* action. *See De La Paz v. Coy*, 786 F.3d 367, 372-80 (5th Cir. 2015) (plaintiffs cannot pursue *Bivens* suits against agents for allegedly illegal conduct during investigation, detention, and removal proceedings). In *Bivens*, the U.S. Supreme Court recognized an implied cause of action to redress a search and seizure by federal officers in violation of the Fourth Amendment. *Bivens*, 403 U.S. at 397. Since then, the Supreme Court has recognized only two other contexts in which a *Bivens* cause of action is available: to redress unlawful discrimination by a congressman in violation of the Fifth Amendment Due Process Clause, *Davis v. Passman*, 442 U.S. 228 (1979), and to redress cruel and unusual punishment by federal prison officials in violation of the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14 (1980). Since the

7

latter case, the Supreme Court has adopted a more cautious course, clarifying that, when a party seeks to assert an implied cause of action against federal officials under various provisions of the Constitution, separation of powers principles counsel that most often Congress, not the courts, should decide whether to provide a damages remedy. *See Bush v. Lucas*, 462 U.S. 367, 390 (1983).

Although *Bivens*, *Passman*, and *Carlson* remain valid in their own contexts, the Supreme Court has repeatedly cautioned that expanding the *Bivens* remedy any further is now a "disfavored" judicial activity. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). This is in line with the Court's observation that it has "consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001).

Whether to extend *Bivens* requires consideration of whether any alternative, existing process for protecting the constitutionally recognized interest is a "convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages" and whether, even without an alternative, there are "special factors counselling hesitation before authorizing a new kind of federal litigation." *Minneci v. Pollard*, 565 U.S. 118, 122-23 (2012) (quoted authorities omitted).

In *Alvarez v. U.S. Immigration and Customs Enforcement*, the Eleventh Circuit declined to extend *Bivens* to imply a cause of action to redress a claim against federal officials for unlawful detention in the custody of ICE in violation of the Fourth and Fifth Amendments. 818 F.3d 1194, 1205-12 (11th Cir. 2016). The court concluded the Immigration and Nationality Act ("INA") provides an adequate alternative remedy observing "federal governance of immigration and alien status is extensive and complex," *id*. at 1207 (citation omitted), and the INA includes "an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations," *id*. at 1208 (citation omitted). The court further observed, "Congress has provided

for a host of review procedures tailored to the differently situated groups of aliens that may be present in the United States." *Id*. The court emphasized Congress has amended the INA no less than seven times and concluded, "In light of the frequent attention that the legislature has given to the complex scheme governing removal and its review procedures over the many years, we are satisfied that Congress has weighed the policy considerations in favor of and against providing damages." *Id*. at 1209. The court added that the plaintiff had not alleged he was actively prevented from seeking meaningful review and relief through the Act and had, in fact, availed himself of some of the review mechanisms. *Id*. at 1209-10.

The Eleventh Circuit in *Alvarez* further concluded that even if the INA provided no adequate alternative remedy, special factors unique to the immigration context counseled restraint: the "breadth and detail" of the INA; due respect for separation of powers and the placement of power over immigration matters in the political branches; and the unworkability of the cause of action, including the absence of clearly defined standards, leading to widespread litigation and resulting reluctance to vigorously enforce immigration laws. *Id*. at 1210-11.

Here, the plaintiff has not shown that *Bivens* provides a remedy for his constitutional claims concerning his detention, removal proceedings and deportation. The INA provides sufficient meaningful remedies to protect constitutionally recognized interests. The plaintiff was entitled to, and received, a hearing on his removability before an immigration judge. (Doc. 22 at 18). He was able to contest the charge that he was removable and was offered an opportunity to appeal. *See* 8 C.F.R. § 1003.1(d)(3)(i). Moreover, under the INA, once the plaintiff unsuccessfully challenged his constitutional claims and citizenship in his removal proceedings, he would have been entitled to review of those claims in a federal circuit court of appeals. 8 U.S.C. § 1252(a)(5); 8 U.S.C. § 1252(b)(5)(A) ("If the petitioner claims to be a national of the United Sates and the court of appeals

9

finds from the pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented, the court shall decide the nationality claim."). If the court of appeals determined that a genuine issue of material fact existed regarding his claim of citizenship, it could transfer the proceeding to a federal district court for a hearing on that issue. 8 U.S.C. § 1252(b)(5)(B).

Given the various options to contest immigration detention and deportation, the undersigned finds that there existed a meaningful alternative process to protect the plaintiff's interests, which makes a *Bivens* remedy improper. Moreover, even if no sufficient alternative remedy existed, special factors counsel hesitation in applying *Bivens* in the removal context as articulated by the Eleventh Circuit in *Alvarez*. *Alvarez*, 818 F.3d at 1210-12. Accordingly, the plaintiff provides no authority to support a claim under *Bivens* and the amended complaint is due to be dismissed for failure to state a claim upon which relief may be granted.

## IV. Recommendation

For the reasons stated above, the undersigned **RECOMMENDS** this action be **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction pursuant to 8 U.S.C. § 1252. In the alternative, the undersigned **RECOMMENDS** this action be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Because this action is due to be dismissed, as recommended herein, the undersigned further **RECOMMENDS** the court **DENY** the plaintiff's motions to suppress, compel, and show cause, (docs. 31, 33, 34), as moot.

## V. Notice of Right to Object

The plaintiff may file specific written objections to this report and recommendation. The plaintiff must file any objections with the Clerk of Court within fourteen (14) calendar days from

the date the report and recommendation is entered.  Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objecting.  Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address.  Objections should not contain new allegations, present additional evidence, or repeat legal arguments.

Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those same conclusions adopted in the district court's order.  In the absence of a proper objection, however, the court may review on appeal for plain error the unobjected to factual and legal conclusions if necessary in the interests of justice.  11th Cir. R. 3-1.

On receipt of objections, a United States District Judge will review *de novo* those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the undersigned's findings of fact and recommendations.  The district judge also may refer this action back to the undersigned with instructions for further proceedings.

The plaintiff may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  The plaintiff may only appeal from a final judgment entered by a district judge.

DONE this 5th day of June, 2020.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE